## JOE DAVIS v. THE STATE.

### No. 3092.　Decided December 17, 1904.

#### 1.—Murder in Second Degree—Charge of Court—Manslaughter.

Where the evidence showed that a short time before the homicide, and on the same day, defendant had taken from deceased the latter's pistol and forced him to give up 15 cents which he had won from deceased at craps; that defendant and one M. then walked over to one B.; that deceased also came there later and asked for his pistol, which the wife of M. started to hand him, when deceased grabbed at it or knocked it out of her hands, the pistol falling to the floor and discharging, whereupon defendant who was sitting in the room with his winchester by his side, fired it at and killed deceased; there being no conversation between defendant and deceased and nothing to indicate that deceased intended to bring on a difficulty, the issue of manslaughter was not involved and no charge thereon required.

#### 2.—Same—Self-Defense.

When defendant testified that he believed the deceased fired at him and that therefore he shot and killed him: the facts showing, however, that the deceased's pistol fell to the ground and was discharged accidentally and that the deceased

was not attempting in any manner an assault upon defendant, the court charged on self-defense and refused to charge on manslaughter which was correct.

Appeal from the District Court of Bowie. Tried below before Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*J. E. Garland,* for appellant.—The court erred in failing to instruct the jury in his original charge as to the law pertaining to manslaughter. The testimony of witness Fred Bland demanded a charge on manslaughter. Maria v. State, 28 Texas, 698; Bishop v. State, 43 Texas, 390; William v. State, 7 Texas Crim. App., 396; Wadlington v. State, 19 Texas Crim. App., 266; Howard v. State, 23 Texas Crim. App., 265.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was awarded seven years imprisonment in the penitentiary under a conviction of murder in the second degree. The only contention here is, that the court erred in not charging on manslaughter. The question is properly presented for adjudication. The facts show that, prior to the homicide, appellant, deceased (Bud Riley), and Jerry Madison, and some other negroes, engaged in a game of craps. This was on the 25th day of December, 1903; and the killing occurred the night of that day. While shooting craps appellant "threw seven," and claimed he won 15 cents, started to take it up; deceased grabbed it, and reached for his pistol, which hung in his pocket. Appellant took the pistol away from him, cocked and levelled it at deceased, and told him, "a God dam black son-of-a-bitch to give up the money, or I would kill him." Deceased immediately handed over the money to appellant, who kept it as well as the pistol he had taken from deceased. He subsequently gave the pistol to Jerry Madison. The parties separated. Later on, appellant and Madison went to the residence of Fred Bland. Deceased came to Bland's house about dark. Appellant and Madison preceded him. Madison was the son-in-law of Bland. Madison's wife was at her father's at the time deceased arrived. There was some conversation between Bland and deceased outside the house, which would have been offensive to appellant if he had heard it; but he testified he did not hear it and was not aware of the remark at the time he did the shooting. After entering the house, deceased said he had come after his pistol and money appellant and Jerry Madison had taken from him. Madison told his wife to get deceased's pistol for him. This she did, and when she handed the pistol, deceased either grabbed or knocked it out of her hand. The pistol fell on the floor, and when it struck the floor discharged. Appellant was sitting on the bed in the same room and had a winchester rifle by him. When the pistol fired, appellant shot Bud Riley with the winchester, the ball enter-

ing a little behind the ear. Deceased, as witness Bland says, "rather had his back or side to defendant when shot." He immediately fell to the floor dead. Defendant walked up to deceased, where he was lying on the floor, and fired the second shot, but this missed deceased. He started to shoot again, when Bland said, "I told him for God's sake not to shoot again; that he was already dead." There were no words spoken between deceased and appellant. Appellant testified that at the crap-game he took deceased's pistol, and forced him to turn over the money which he kept, and handed deceased's pistol to Madison, and they separated—Madison carrying the pistol away. He says: that he did not hear any bad language used by deceased the night of the homicide at the residence of the witness Bland; that he was in the room at the time and did not go out where they were; that he was sitting on the side of the bed with his winchester by his side. After Bland and Madion and deceased came in the house, Madison's wife got deceased's pistol for him, "and they got to scuffling over it, and it went off. I could not see deceased and I thought he shot at me. The bullet from the pistol came whizzing by, and I felt it go through my coat. There was a hole in my coat that looked like a bullet hole." Immediately after the homicide appellant fled to the State of Arkansas, was gone for some months, when he was finally arrested. He states that the coat he had on at the time of the homicide was in Arkansas. It was not produced at the trial. Defendant said he had no opportunity after his arrest to bring the coat and have it before the jury. His counsel testified that he had sent the brother of defendant after the coat, which was about twenty-five miles distant from Texarkana, at Garland, Arkansas. He sent the brother two days before the trial, or as he expresed it,—"day before yesterday;" that the brother had promised to have it in court on the morning of the trial. This, he says, was the only chance he had for sending after the coat. This is the substance of the testimony.

The court charged on murder in the first and second degrees, and very fully on self-defense; and appellant served an exception to the court's failure to charge manslaughter, and requested a special charge submitting that issue, which was refused by the court. It is contended that the testimony of State's witness Bland makes or suggests the issue of manslaughter, wherein he testified that when Madison's wife handed the pistol to deceased, deceased either knocked it out of her hand or it fell to the floor and fired, that this was a sufficient fact, in connection with the environments of the situation to require the court to submit to the jury the issue of manslaughter; and that those circumstances were of such a character as to render his mind incapable of cool reflection. If the facts were as detailed by Bland, appellant was aware of the fact that deceased was not trying to shoot him. The pistol was on the floor and discharged accidentally by reason of the fall. There is no fact, as we understand this record, showing or tending to show, from any standpoint, that deceased was making any effort to shoot appellant, deceased had no control of the pistol, and was not instrumental, unless accident-

ally, in causing it to fire; that it was not under his control at the time
it did fire, and that these acts were not directed at or towards appellant.
Under his testimony there was a scuffle between deceased and the
"parties," by which we suppose he meant to convey the idea that the
scuffle was between deceased and Madison and his wife; and that during
this scuffle the pistol was fired. He says he thought deceased was
shooting at him; that the ball whizzed by him, passing through his coat.
If he believed this, and he shot and killed it was self-defense; that is, it
he believed appellant was shooting at him it would be self-defense. It
is an uncontroverted fact that there was no conversation between de-
ceased and appellant, and there was nothing to indicate so far as we can
see, that deceased intended to bring on a difficulty. He came for his
pistol, which appellant had taken from him and carried away. Under
these facts we do not believe the issue of manslaughter was suggested.
Finding no error in the record requiring a reversal, the judgment is
affirmed.

*Affirmed.*